IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARGARET M. KRAEGE, KELLY C.
TOMKO, and STEPHANIE A. TOMKO,

                Plaintiffs,                  OPINION AND ORDER

          v.                                    09-cv-352-vis[1]

FRANK BUSALACCHI,
Secretary, Wisconsin Department of
Transportation,

LYNNE JUDD,
Administrator, Wisconsin Division of
Motor Vehicles,

and

JOHN DOES 1-10,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil class action, plaintiffs Margaret M. Kraege, Kelly C. Tomko and Stephanie A. Tomko contend that defendants Frank Busalacchi, Lynne Judd and John Does

---

[1] Because the parties declined to allow Magistrate Judge Stephen Crocker to exercise jurisdiction over this case, it has been set for assignment to a visiting judge. I will assume jurisdiction over the case for the purpose of this order.

1

1-10 released plaintiffs' personal information in violation of the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-25.  Plaintiffs assert claims against defendants in their individual capacities directly under the Act and under 42 U.S.C. § 1983.  Jurisdiction is present.  28 U.S.C. § 1331.

Before the court is defendants' motion to dismiss plaintiffs' claims.  Defendants contend that sovereign immunity bars plaintiffs' claims under the Driver's Privacy Protection Act and that plaintiffs cannot sue under § 1983 because the Act provides a comprehensive mechanism for relief.  The motion will be granted.  It is the state's policies, and not defendants' implementation of them, that are at the heart of plaintiffs' complaint.  Thus, plaintiffs' claims under the Act are substantially against the State of Wisconsin and barred by the doctrine of sovereign immunity.  Ordinarily, such a conclusion would not prevent plaintiffs from pursuing injunctive relief under § 1983, but in this case, any such claim fails because the Act provides a comprehensive mechanism for relief that does not contemplate enforcement of plaintiffs' rights under § 1983.

Defendants attached documents to their motion describing the state's policies for releasing Wisconsin driver information.  They contend that the documents may be treated as part of the complaint because they are referred to in the complaint and they are central to plaintiffs' claims.  Plaintiffs do not disagree.  Therefore, the documents will be treated as part of the complaint.  Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d

429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim.") (citations omitted). I draw the following facts from plaintiffs' complaint and the documents attached to defendants' motion.

ALLEGATIONS OF FACT

Plaintiffs Margaret M. Kraege, Kelly C. Tomko and Stephanie A. Tomko are residents of Wisconsin. Plaintiffs seek to represent a class of individuals defined as

> All individuals licensed to drive in the State of Wisconsin anytime from June 4, 2004 forward, whose personal information, as defined by 18 U.S.C. § 2725(3), was disclosed by the Wisconsin Department of Transportation, the Wisconsin Division of Motor Vehicles, or any agent, officer, employee, or contractor, thereof, to ShadowSoft or PublicData, or any agent of ShadowSoft or PublicData.

Plaintiffs estimate that the proposed class could include several million members.

Defendants Frank Busalacchi is Secretary of the Wisconsin Department of Transportation, and Lynne Judd is Administrator of the Wisconsin Division of Motor Vehicles. The John Doe Defendants include directors, employees, agents and contractors of the Department of Transportation and the Division of Motor Vehicles.

Defendants' duties include, among other things, collecting and maintaining Wisconsin driver information. As early as June 2001, defendants released information to

3

ShadowSoft, a company specializing in public records distribution. ShadowSoft sold the information to PublicData, a company that aggregates consumer data and sells it over the internet. PublicData made the information available for search and sale on the internet.

The state's policies permit release of driver information to purchasers who purport to use it for purposes permissible under the Act. They require only a cursory review of the purchasers' intended use of the information. However, the policies do require defendants to inform purchasers of the liability arising from misuse of the information and advise purchasers to seek legal counsel if there is a question about the permissibility of their intended use.

OPINION

A. Sovereign Immunity and the Driver's Privacy Protection Act

The doctrine of sovereign immunity prohibits suits against the state or its agencies for monetary damages or equitable relief. College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board, 527 U.S. 666, 670 (1999); Pennhurst v. State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). The state's sovereign immunity can be limited in only a few circumstances: (1) when Congress abrogates the state's immunity pursuant to a valid exercise of power, Tennessee v. Lane, 541 U.S. 509, 533-34 (2004); (2) when the state makes an express and voluntary waiver of the immunity,

4

Clark v. Barnard, 108 U.S. 436, 447-48 (1883), which make take the form of participation in a federal program clearly conditioned on such a waiver, Edelman, 415 U.S. at 673-74; or (3) by the state's consent to suit in federal court, Lapides v. Board of Regents of the Univ. System of Georgia, 535 U.S. 613 (2002).

Plaintiffs contend that the doctrine of sovereign immunity does not bar their suit because they are asserting claims only against defendants in their individual capacities for "knowingly" releasing driver information when they "knew, or reasonably should have known" that doing so violated plaintiffs' rights under the Act.

Courts routinely recognize circumstances in which sovereign immunity does not bar suits brought against a state's officials in their individual capacities. As plaintiffs point out, such claims are not precluded even though damages may be paid from the state treasury and may exceed defendants' ability to pay, and even though the state has chosen to indemnify its employees. Pennhurst, 465 U.S. at 1022-23 (internal citations omitted). This is all true, but plaintiffs' complaint faces another problem: sovereign immunity bars suits against officials sued in their individual capacities if the suits are substantially against the state. Idaho v. Coeur d' Alene Tribe of Idaho, 521 U.S. 261, 269 (1977) (holding that tribe could not sue state of Idaho unless suit fell within for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities). Although "[i]ndirect effects are not enough," the doctrine of sovereign immunity bars a suit "nominally against

5

state employees in their individual capacities that *demonstrably* has the *identical* effect as a suit against the state . . . ." Luder v. Endicott, 253 F.3d 1020, 1023 (7th Cir. 2001) (emphasis in original).

Plaintiffs allege only one fact in support of their contention that defendants have violated their rights: defendants participated in releasing driver information under the state's policies. Plaintiffs do not suggest that defendants engaged in any conduct that is both independent of what the states's policies require and a violation of the Act.

This makes plaintiffs' case similar to Luder, 253 F.3d at 1022. In that case, 145 plaintiffs sought payment for pre- and post-work shifts, including minimum wage and overtime pay. The Court of Appeals for the Seventh Circuit held that plaintiffs' suit against a state official was actually a suit against the state because plaintiffs sought "to accomplish *exactly* what they would accomplish were they to maintain this suit against the state and did so successfully: . . . to force the state to accede to their view of the Act [and abide by it]." Id. at 1024 (emphasis supplied). Under the circumstances of the case, the individual defendants would be unable to pay and would either "declare bankruptcy and quit;" or "declare bankruptcy and comply with [the law] as interpreted by the court." Id.

The same result would occur in this case. A judgment in plaintiffs' favor could require defendants to make statutory payments of $2500 to each of the millions of potential class members who hold Wisconsin driver's licenses now or have held them at any time during

6

7the class period. These are statutory damages only and do not include punitive damages, attorney fees and costs and other equitable relief. 18 U.S.C. § 2724(b). As in Luder, defendants would be forced to file bankruptcy and either quit or comply with the court's interpretation of the Act. The result would be to force the state "to accede to their view of the Act." Luder, 253 F.3d at 1024, achieving for plaintiffs a change in the law itself.

Plaintiffs contend that this case differs from Luder in that it challenges not the state's policies, but rather the actions of state officials who are misreading the state's policies. In Luder, the court of appeals acknowledged that, where state officials misread and misapply the law in favor of the state, a suit against those state officials in their individual capacities "would advance rather than thwart state policy . . . ." Id. In this case, plaintiffs contend that Wisconsin's policies direct the individual defendants to comply with the Act, but that the individual defendants are violating the Act. A closer examination of the policies and plaintiffs' allegations belies plaintiffs' contention that this is a case about state officials misreading the state's policies. General statements in the state's policy require compliance with the Act, but specific provisions of the Act allow the disclosure plaintiffs are challenging. Plaintiffs acknowledge this in their complaint when they state that one of the issues in the case is "the nature and extent of the individual Defendants' participation in [the state's] policy of disclosing the personal information of Wisconsin drivers" and whether defendants' participation violated the Act. Complaint, ¶ 30.a. Thus, if the individual defendants are

7

"misreading" the policy by disregarding the requirement that they comply with the Act, it is only because they are following more specific policies regarding disclosure. In other words, even as plaintiffs frame the issue, the problem is with the inconsistencies in the state's policy, not with the discretionary acts of the individual defendants.

One difference between the statutes at issue in this case and <u>Luder</u> is worth mentioning. In <u>Luder</u>, 253 F.3d at 1021, the sovereign immunity analysis applied only to a claim for damages because plaintiffs' claim for injunctive relief was barred under the Fair Labor Standards Act itself. In this case, plaintiffs could pursue injunctive relief under the Driver's Privacy Protection Act, §§ 2724(a), (b)(4), 2725(2), so it is not clear whether the rationale of <u>Luder</u> would apply to plaintiffs' request for injunctive relief. However, plaintiffs do not make this argument, perhaps because injunctive relief against the individual defendants would be a rather empty victory. A judgment ordering injunctive relief would enjoin the individual defendants, but not the State of Wisconsin, from releasing driver information under the state's policies. Any injunctive relief would be temporary until the state appoints a new secretary and administrator to replace the individual defendants. In any event, plaintiffs have waived any argument that their request for injunctive relief distinguishes their case from <u>Luder</u>.

Because it is evident from the complaint and the relief available under the Act that plaintiffs' challenge is to the state's policies themselves, I conclude that plaintiffs' suit is

8

substantially a suit against the state. Accordingly, I will grant defendants' motion to dismiss Count I of plaintiffs' complaint.

### B. Enforcing the Act under 42 U.S.C. § 1983

In count II of their complaint, plaintiffs seek to enforce the rights provided under the Driver's Privacy Protection Act by means of 42 U.S.C. § 1983. For some reason, defendants do not argue that the same sovereign immunity problems barring a suit brought under the Driver's Privacy Protection Act would bar the proposed § 1983 suit. Case law suggests otherwise. Quern v. Jordan, 440 U.S. 332, 340-45 (1979) (holding that § 1983 does not abrogate the states' Eleventh Amendment immunity). Instead, defendants contend that plaintiffs are not entitled to enforce the Act under § 1983 because the Act sets forth a comprehensive mechanism for obtaining relief that Congress intended would supplant, rather than complement the remedies available under § 1983.

Generally, § 1983 claims are presumed valid unless a defendant demonstrates that Congress intended to enforce the federal rights in question under the provisions of the particular statute, rather than under § 1983. Blessing v. Freestone, 520 U.S. 329, 341, 361 (1997). Such intent may be explicit or implicit. Id. at 341. Enforcement under § 1983 is foreclosed implicitly when the enforcement provisions of the particular statute are incompatible with those under § 1983. Livadas v. Bradshaw, 512 U.S. 107, 133 (1994).

9

Enforcement under § 1983 is explicitly foreclosed where "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." Alexander v. Sandoval, 532 U.S. 275, 290 (2001).

The Court of Appeals for the Seventh Circuit has not considered whether plaintiffs may use § 1983 to enforce their rights under the Driver's Privacy Protection Act. In Collier v. Dickinson, 477 F.3d 1306 (11th Cir. 2007), the Court of Appeals for the Eleventh Circuit held that the relief offered by the Act was complementary to that available under § 1983. Id. at 1311. The court reasoned that the Act "did not create so many specific statutory remedies for individual enforcement" as to supplant § 1983, and that "[t]here is nothing in the statute to suggest that Congress intended to exclude Section 1983 relief." Id. In Arrington v. Richardson, --- F. Supp. 2d ---, No. 09-cv-4049, 2009 WL 3193165 (W.D. Iowa Oct. 1, 2009), the district court adopted the reasoning in Collier, finding it compelling that in the Act "Congress neither required plaintiffs to comply with any procedures before filing suit nor . . . restrict[ed] plaintiffs from obtaining any remedies provided under § 1983." Id. at *10. In contrast, in Roberts v. The Source for Public Data, 606 F. Supp. 2d 1042 (W.D. Mo. 2008), the district court held that, "[g]iven [the Act's] comprehensive remedial scheme, the Court must presume that Congress intended that the enforcement scheme it created in the [Act] would be the exclusive remedy for violations, precluding resort to § 1983 plaintiffs." Id. at 1047.

10

Although the parties rely heavily on these cases and argue back and forth about the weight to be given them and their relative persuasiveness, the fact is that none of the cases explain what provisions in the Act led the court to hold that the Act either "supplanted" or "complemented" relief under § 1983. Recourse to the Act itself is necessary.

The Driver's Privacy Protection Act provides two ways of obtaining relief, depending on who is suing or being sued. Section 2724(a) provides that an individual whose information is released "for a purpose not permitted under [the Act]" may bring a civil suit against the "person" who "knowingly obtains, discloses, or uses" driver information for impermissible purposes. The Act defines a "person" as "an individual, organization or entity"; states and their agencies are excluded specifically. 18 U.S.C. § 2725(2). Section 2723(b) provides that the Attorney General of the United States may enforce the Act against a state and its agencies, including "[a]ny State department of motor vehicles," that maintains a "policy or practice of substantial noncompliance" with the Act.

The language of the Act uses unambiguous terms to identify the parties who are subject to suit under the Act, and by whom. 18 U.S.C. §§ 2723(b), 2724(a), 2725(2). Congress entrusts enforcement of plaintiffs' rights under the Act against a state or its agencies, including the "[s]tate department of motor vehicles," to the Attorney General. It does not provide a mechanism for individual plaintiffs to sue a state or agency. § 2723(b). This mechanism is not as complex or exhaustive as those in some acts that the Supreme

11

Court has held supplant § 1983, such as where "the statute at issue required plaintiffs to comply with particular procedures and/or to exhaust particular administrative remedies prior to filing suit." Fitzgerald v. Barnstable School Committee, 129 S. Ct. 788, 795 (2009) (quoting Middlesex County Sewerage Authority v. National Sea Clammers Association, 453 U.S. 1, 6 (1981)). Even so,

> "[t]he provision of an express, private means of redress in the statute itself" is a key consideration in determining congressional intent, and . . . "the existence of a more restrictive private remedy for statutory violations has been the dividing line between those cases in which we have held that an action would lie under § 1983 and those in which we have held that it would not."

Id. at 796 (quoting Rancho Palos Verdes, 544 U.S. at 121). Unlike the Act, § 1983 would allow injunctive relief against state officials in their official capacities, thereby providing individuals with a mechanism for enjoining the state. Ex parte Young, 209 U.S. 123, 159-160 (1908); Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, n.10 (1989) (holding that suit against state officials in their official capacities is suit against officials' offices, not persons, but acknowledging the exception for prospective injunctive relief). The Act allows only the Attorney General to address a state's violations and then only by civil penalty. 18 U.S.C. § 2723(b).

Because the Act has a more restrictive private remedy, I conclude that plaintiffs' § 1983 claim to enforce their rights under the Act is barred. Accordingly, I will grant

12

defendants' motion to dismiss count II of plaintiffs' complaint.

### C. Plaintiffs' Motion to Amend Their Complaint

In their opposition brief, plaintiffs ask that, in the event their claims against defendants do not survive the motion to dismiss, they be granted leave to amend their complaint to pursue their claims against defendants in their official capacities. That request will be denied. It would be futile to amend the complaint to pursue official capacity claims. As I have explained, the Act contains no mechanism for private suits against a person's office, only against "persons." 18 U.S.C. § 2723(b), 2724(a)-(b), and 2725(2). In addition, § 1983 is not available both because it does not permit suits against state officials in their official capacities and because the Act provides a specific mechanism for obtaining relief that does not contemplate relief under § 1983.

### ORDER

IT IS ORDERED that

1. The motion of defendants Frank Busalacchi, Lynne Judd and John Does 1-10 to dismiss, dkt. # 12, is GRANTED; the claims of plaintiffs Margaret M. Kraege, Kelly C. Tomko and Stephanie A. Tomko are DISMISSED with

13

prejudice;

2. Plaintiffs' motion for leave to amend their complaint, dkt. # 21, is DENIED;

and

14

3. The clerk is directed to close this case.

Entered this 15th day of November, 2009.

> BY THE COURT:
>
> /s/
>
> _____
> BARBARA B. CRABB
> District Judge